

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

JUL - 1 2010

TONY R. MOORE, CLERK
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

PATRICIA D. SCOTT

versus                                         CIVIL ACTION NO. 08-1003
                                               JUDGE TOM STAGG
CADDO PARISH

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by the defendant, the Parish of Caddo ("Caddo Parish"). See Record Document 24. For the reasons set forth below, Caddo Parish's motion for summary judgment is **GRANTED**.

### I. BACKGROUND

Patricia Scott ("Scott") is a black female who was employed by Caddo Parish as Field Manager for Caddo Animal Services. She worked for Animal Control for seventeen years. Scott alleges that she was "terminated from her job for failing to send a racoon she euthanized to the laboratory for testing for rabies and for failing to log in the narcotic used for the euthanization." Record Document 1 at 1. She further asserts that "more severe and egregious mistakes have been made by other employees without termination of their employment" and contends that she was terminated because of her race and gender. Id. at 2.

On June 11, 2007, Lee Stockman ("Stockman") brought a raccoon to Caddo

Parish Animal Services that he had trapped. He had been scratched by the raccoon and reported it so that the animal could be tested for rabies. Several weeks later, Stockman informed Woodrow Wilson ("Wilson"), Caddo Parish Administrator, that he had never heard from Animal Services about the results of the rabies test on the raccoon. Wilson instructed Dr. Michael Dale ("Dr. Dale"), then director of Animal Services, to launch an investigation into the incident. Dr. Dale enlisted Animal Services employee Brandon Daniel ("Daniel") to conduct the investigation, but Daniel did not receive cooperation from the other employees. Due to the lack of cooperation, the Caddo Parish Sheriff's Office was called in to investigate. The sheriff's office found that the raccoon had not been documented as being brought in and it had not been sent for rabies testing, in violation of Caddo Parish Animal Control Policies, Sections 10 and 18. Scott later admitted that she was the person who had received the animal from Stockman and she had euthanized it. Additionally, during the investigation, it was discovered that Scott failed to properly maintain controlled substances log entries and to review and initial use of controlled dangerous substances in violation of Chapter 12, Section 1225 of the Louisiana Veterinary Code.

A predisciplinary conference was held on July 26, 2007, regarding Scott's infractions. During the conference, Scott took "full responsibility for everything that

was not done." Record Document 31, Ex. 7-2 at 14.[1] Scott acknowledged that Stockman "could have died" because of the failure to document the raccoon and send it for testing. See Record Document 24, Ex. 3 at 27. Scott further acknowledged that she had used controlled substances that had been previously issued to an employee who was terminated at the time the substance was used and that she performed euthanizations using controlled dangerous substances that were issued to other employees. See id., Ex. 3 at 21.

On or about August 1, 2007, Scott was terminated for failing to send the raccoon she euthanized to the laboratory for testing for rabies and for failing to log in the narcotic she used for the euthanization. She appealed her termination to the Parish Administrator and CEO, Wilson, who upheld the termination. On March 21, 2008, Scott filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination because of her race and gender. The EEOC notified Scott by letter dated April 18, 2008, that she was entitled to initiate a civil action. Scott then filed this action against Caddo Parish, asserting that she was

---

[1] The court notes with trepidation that Caddo Parish quoted this statement in its brief but provided *no* citation for the quote or supporting documentation that the statement was made by Scott. The court, however, located documentation of the quote in exhibits provided by the *plaintiff* along with her opposition to the motion for summary judgment. In addition, the court notes that Caddo Parish submitted only selected excerpts of many of its exhibits. The court would have greatly benefitted from the submission of these exhibits in their entirety.

terminated because of her race and gender. Thereafter, Caddo Parish filed the instant motion for summary judgment.

## II. ANALYSIS

A.  **Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004) (citations and quotations omitted). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See

4

Boudreaux v. Swift Transp. Co., Inc., 402 F.3d 536, 540 (5th Cir. 2005). "[T]he nonmovant cannot satisfy [his] burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Freeman v. Tex. Dep't of Criminal Justice, 369 F.3d 854, 860 (5th Cir. 2004).

**B.  Race And Gender Discrimination.**

Scott alleges that Caddo Parish discriminated against her because of her race and gender by discharging her. Title VII provides that "[i]t shall be an unlawful employment practice for an employer--(1) to ... discharge any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).[3] A plaintiff may prove employment discrimination through direct or circumstantial evidence. See Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003). As there is no direct evidence of discrimination in this case, Scott's claims are evaluated using the clear evidentiary framework set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). Under this analysis, if Scott establishes a prima facie case of either race or gender discrimination, the burden shifts to Caddo Parish to articulate a legitimate, non-discriminatory reason for terminating her. See id. at 802-03, 93 S. Ct. at 1825.

---

[3]See Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316 (5th Cir. 2004) ("The summary judgment analysis is the same for claims of race discrimination under Title VII ... and [42 U.S.C.] § 1983.")

5

If Caddo Parish meets its burden, the prima facie case disappears and the burden shifts back to Scott to establish either (1) that Caddo Parish's proffered reason is not true but is instead a pretext for discrimination or (2) that Caddo Parish's reason, while true, is not the only reason for its conduct, and another "motivating factor" is one of Scott's protected characteristics. See Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004). Scott bears the ultimate burden of proving that Caddo Parish's proffered reason is untrue and a mere pretext for the real discriminatory purpose. See id. Scott can establish pretext by "showing that [Caddo Parish's] proffered explanation is false or 'unworthy of credence.'" Laxton, 333 F.3d at 578 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S. Ct. 2097 (2000)). At the summary judgment stage, the question is not whether Scott has proven pretext, but rather whether she has raised a genuine issue of fact with respect to pretext. See Hall v. Gillman Inc., 81 F.3d 35, 37 (5th Cir. 1996).

1. **Prima Facie Case.**

Scott must first establish a prima facie case of race or gender discrimination under Title VII by a preponderance of the evidence. See McDonnell Douglas, 411 U.S. at 802-04, 93 S. Ct. at 1824-25. Scott can establish a prima facie case by providing evidence that she: (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) others

similarly situated, but not in her protected class, were treated more favorably. See id.; Willis v. Coca Cola Enters., Inc., 445 F.3d 413, 412 (5th Cir. 2006); Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 (5th Cir. 1999). Scott is a black female who was the Field Manager of Caddo Parish Animal Services who was terminated and replaced by a white male. Thus, she is a member of a protected class who was subject to an adverse employment action, and because of her lengthy service, the court will presume that she was qualified for her position.

Scott, however, cannot meet the fourth element of her prima facie case on the basis of either race or gender discrimination. She has failed to present evidence that *similarly situated* non-black or female employees committed the same or similar policy violations and were not terminated for their actions. In her opposition to Caddo Parish's motion for summary judgment, Scott admits that "the tasks [she] performed pertaining to the raccoon incident at issue in this suit were tasks normally assigned to Animal [C]ontrol Officers" and that these tasks were "not her daily job function." Record Document 31 at 6. Then, Scott summarily concludes that "[i]n determining whether other employees were treated more favorably, we look to performance of Animal Control Officers." Id. She then argues that "[o]ther Animal Control Officers who made similar mistakes or violations of policy were not terminated." Id.

7

However, by Scott's own admission, she was not an Animal Control Officer but instead the Field Manager whose job duties were to "[s]upervise[], train[], evaluate[], and coordinate[] activities of assigned employees," many of whom were Animal Control Officers. Record Document 31 at 6 and Ex. 7-3. Thus, by her own averment, Scott has acknowledged that she was not similarly situated to other Animal Control Officers. She refers to Animal Control Officer Willie Watts, a black male, who was not terminated for failing to follow procedure for unloading a dog at the shelter. He was written up by his supervisor, Brandon Daniel, for allowing a rabies bite dog to escape. However, according to his disciplinary write-up, the animal was captured and euthanized the same night of the escape and a specimen was sent to be tested for rabies the next day. See Record Document 24, Ex. 6 at 730.

Scott complains of actions by other employees who worked for Caddo Parish Animal Services, in addition to Willie Watts, and that the actions of these employees did not result in termination. However, these employees, like Watts, were not "similarly situated." She refers to Animal Control Officer James Arthur, a black male who was also supervised and written up by Daniel, who was not terminated for failing to turn in animal history cards for animals impounded or for submitting incomplete incident reports. She next refers to Iris Ashton; however, Iris Ashton is both black and female and thus is in Scott's protected class. Finally, Scott refers to Animal

Control Specialist Richard Quellin, who was written up by Scott as his supervisor. He was a white male who was not terminated for failing to properly secure explosives that were left on his truck. Scott concludes that none of these employees was fired for infractions that potentially placed the public at harm. See id. at 7. Caddo Parish pointed out in reply that the people to whom Scott compares herself did not have the same supervisor as Scott and that the actions for which the male animal control officers were disciplined were not the same as her actions. Caddo Parish further counters that "none of the incidents for which the other officers were disciplined had a direct effect upon a citizen." Record Document 32 at 5. More importantly, none of the incidents cited by Scott involved someone in a *management* position.

The case law is well-settled that to succeed under a theory of disparate treatment, Scott must prove that her circumstances were "nearly identical" to the circumstances of those about whom she complains. See Berquist v. Wash. Mut. Bank, 500 F.3d 344, 353 (5th Cir. 2007). In Perez v. Tex. Dep't of Criminal Justice, 395 F.3d 206, 213 (5th Cir. 2004), the Fifth Circuit clearly stated:

> We, however, have specifically addressed the plaintiff-employee's burden of proof in disparate treatment cases involving separate incidents of misconduct and have explained consistently that for employees to be similarly situated those employees' circumstances, including their misconduct, must have been "nearly identical."

Id. (citing Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991) and Smith v.

Wal-Mart Stores, 891 F.2d 1177, 1180 (5th Cir. 1990) (per curiam)). The Perez court also detailed the case of Wyvill v. United Cos. Life Ins. Co., 212 F.3d 296 (5th Cir. 2000), wherein the plaintiff argued that his employer terminated him for rude and abusive conduct but did not terminate a younger employee for such behavior. In Wyvill, the court found that "the striking differences between the two men's situations more than accounted for the differential treatment they had received." Perez, 395 F.3d at 213 (citing Wyvill, 212 F.3d at 305). None of the documents attached to Scott's opposition to Caddo Parish's motion for summary judgment raise a genuine question as to whether Scott and any other person about whom she complains performed nearly identical jobs. See Shackelford, 190 F.3d at 405-06 (holding that similarly situated means employees with the same position, qualifications, and pay rate). Scott has not produced sufficient summary judgment evidence to show that she and any other employee about whom she complains are similarly situated. As Scott has not established a prima facie case, her claim must fail. The court will, nonetheless, analyze Scott's claim as if she established a prima facie case.

    2.    **Legitimate, Non-Discriminatory Reason.**

Even had Scott established a prima facie case, her claim would still fail. The existence of a prima facie case would cause a presumption of discrimination to arise. See McDonnell Douglas, 411 U.S. at 802-804, 93 S. Ct. at 1824-25; Pratt v. City of

Houston, Tex., 247 F.3d 601, 606 (5th Cir. 2001). As a result, the burden would shift to Caddo Parish, who must then articulate a legitimate non-discriminatory reason for Scott's termination. See McDonnell Douglas, 411 U.S. at 802-804, 93 S. Ct. at 1824-25; Pratt, 247 F.3d at 606. The burden of production is satisfied "regardless of the persuasive effect of the proffered reason." Polanco v. City of Austin, Tex., 78 F.3d 968, 976 (5th Cir. 1996) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515-17, 113 S. Ct. 2742 (1993)). If Caddo Parish can make such a showing, the burden shifts back to Scott to demonstrate that the articulated reason was pretextual. See McDonnell Douglas, 411 U.S. at 802-804, 93 S. Ct. at 1824-25; Pratt, 247 F.3d at 606. Scott may prove pretext by "either directly ... persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095 (1981).

Caddo Parish contends that Scott was terminated for violating Caddo Parish Animal & Mosquito Control Policies, specifically, Sections 10 (Euthanasia) and 18 (Rabies Quarantine). In support of its motion for summary judgment, Caddo Parish submitted the Caddo Parish Animal & Mosquito Control Policy and Procedures Manual. See Record Document 24, Ex. 2. Page twenty-seven of the manual contains Section 10, which provides, in pertinent part:

>    C.   After euthanization, animals being tested for rabies shall have their heads removed and be placed in plastic bags, tagged, and stored in the inside cooler before they are sent to the Shreveport Regional Laboratory for testing. . . . Animals not being tested for rabies shall be placed in the outside cooler.

Id., Ex. 2 at 27. Page forty-two of the manual contains Section 18, entitled "Rabies Quarantine," which states, in pertinent part:

>    A.   All animal bites shall be recorded on the rabies quarantine report. Each form must be completed in its entirety regardless of who is recording the information, including the rabies vaccination and disposition of the animal.
>
>    . . .
>
>    K.   Other Animal Bites
>
>        1.   The Sanitary Code, State of Louisiana, Chapter 111, The Control of Rabies, states that any animal other than a dog or cat that bites a human being or any animal that is suspected of being infected with rabies (whether or not it has bitten anyone) may be caused by the State Health Officer for the protection of the public health to be killed and the head of such animal examined for rabies free of charge by a laboratory of the Louisiana Department of Health and Human Resources.
>
>        2.   Wild and/or exotic animals, if caught, are to be immediately euthanized and tested for rabies.

Id., Ex. 2 at 43. Also included in the evidence presented by Caddo Parish are, inter

alia: (1) portions of the transcript of Scott's predisciplinary conference[4] (wherein Scott admitted that "this man could have had rabies and I know that he could have died"), (2) the report from the Caddo Parish Sheriff's Office containing the complaint by Stockman, interviews of other employees at Caddo Parish Animal Control, including an interview with Scott, and conclusions regarding potential violations of

---

[4]The court again notes that a complete transcript of the predisciplinary conference would have been useful. Other pages of the transcript (submitted by the plaintiff as opposed to Caddo Parish) help to clarify exactly what items were discussed at the predisciplinary conference. For example, the first page of the transcript details an opening statement made by Erica Bryant, the Director of Human Resources/Finance wherein she stated:

> We're here to discuss policy violation 500 code of conduct section G: Employees may be subject to disciplinary action for inappropriate conduct including but not limited to specifically # 8, disregard of safety rules or of common safety and sanitary practices and G 18: Any other act detrimental to the interests of the parish or the other employees and citizens -- Violation of other parish or departmental policy (Caddo Parish A&MC Policy and Procedures Manual Section 10 Euthanasia and 18 Rabies Quarantine)[.] Specifically we have failure to document the June 11, 2007 raccoon incident, failure to transfer raccoon to regional lab for rabies testing on June 11, 2007, failure to document the use of sodium pentothal to euthanize the raccoon on June 11, 2007, failure to maintain controlled substances in usage log entries, failure to review and initial each use of controlled substance. Those are the policy violations that we have Ms. Scott we want to give you the opportunity, if no one has any questions or comments, does anyone have any comments, we want to give you the opportunity to address these violations that we have pending against you.

Record Document 31, Ex. 7-2 (Attachment To Wilson Deposition) (errors in original). Again, the court notes that the page containing these relevant comments was supplied to the court by the *plaintiff*.

the Louisiana Veterinary Administrative Code, the Public Health Sanitary Code and the Caddo Parish Animal Control Policy and Procedures Manual,[5] (3) portions of Scott's deposition wherein she admitted that Stockman could have died and (4) portions of Wilson's deposition wherein he confirmed that the infractions committed by Scott were grounds for immediate termination. See Record Document 24, Exs. 3-4 and 7-8.

3. **Pretext.**

The foregoing evidence proffered by Caddo Parish satisfies its burden of providing a legitimate, non-discriminatory reason for terminating Scott. Accordingly,

---

[5]The report from the Caddo Parish Sheriff's Office concluded with a finding that "[n]o criminal violations were identified, but several incidents occurred . . . which appear to be serious violations" including:

> (1) Failure of Lead CAET [Certified Animal Euthanasia Technician] Pat Scott to document the June 11, 2007 raccoon incident, R.S. 37:1556 and CPACP&P [Caddo Parish Animal Control Policy and Procedures], Section 18, (2) Failure of Lead CAET Pat Scott to transfer raccoon to regional lab for rabies testing on June 11, 2007, (R.S. 37:1554 A(1) -- State Public Health Sanitary Code; Title 51, Part III, Chapter I -- CCACP&P Section 18), (3) Failure of Lead CAET Pat Scott to document the use of sodium pentobarbital to euthanize the raccoon as per Louisiana Administrative Veterinary Code Chapter 12, Section 1223, (6) Failure of Lead CAET Pat Scott to maintain controlled substances and the usage log entries as required by Chapter 12, Section 1225 of the Louisiana Veterinary Code, and (7) Failure of Lead CAET Pat Scott to review and initial each use of controlled substances as required by Chapter 12, Section 1225 of the Louisiana Veterinary Code.

Record Document 24, Ex. 4 at 5.

the presumption of unlawful discrimination disappears, and the burden shifts back to Scott to prove that the proffered reasons are a pretext for discrimination. The ultimate determination in the summary judgment context is whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable factfinder could infer discrimination. See Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000); Reeves, 530 U.S. at 142-43, 120 S. Ct. at 2106. In making this determination, a court should consider "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case. . . ." Crawford, 234 F.3d at 902 (quoting Reeves, 530 U.S. at 148-49, 120 S. Ct. at 2109). The Fifth Circuit Court of Appeals has recognized the difficulty in proving discrimination by direct evidence. See LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 449 (5th Cir. 1996). Thus, the strength of the circumstantial evidence supporting the plaintiff's prima facie case and showing the defendant's proffered reason is false may be enough to create an inference of discrimination. See Crawford, 234 F.3d at 902; Reeves, 530 U.S. at 148, 120 S. Ct. at 2109.

A mere scintilla of evidence of pretext does not create an issue of material fact in all cases. See Crawford, 234 F.3d at 902; Wyvill, 212 F.3d at 301. Scott must present "sufficient evidence to find that the employer's asserted justification is false."

Crawford, 234 F.3d at 903 (quoting Reeves, 530 U.S. at 148, 120 S. Ct. at 2109). The determination is to be made on a case-by-case basis, depending on the nature, extent, and quality of the evidence, as to whether a jury could reasonably infer discrimination. See id.

Scott has failed to present sufficient evidence of pretext to support a reasonable inference of discrimination on the basis of race or gender in this case, and has failed to demonstrate a genuine issue of material fact as to whether Caddo Parish's employment action was illegally motivated in any way. First, Scott contends that Caddo Parish "did not follow its own procedures in terminating" her. Record Document 31 at 1. However, Scott never refers to this argument again following its use in the opening paragraph of her opposition to the motion for summary judgment. Next, Scott attacks the veracity of her *own* statements that she "took responsibility for everything that was not done," and that Stockman "could have died," stating in her opposition brief that there "is no showing that Plaintiff's opinions are indeed fact." Id. at 3. Scott also somehow concludes that "[d]efendant has provided no evidence regarding the actions taken by Scott that were a violation of its policy." Id. at 4-5. Finally, she inexplicably asserts that "Defendant has never recited exactly what actions taken by Patricia Scott led to her termination." Id. at 5.[6]

---

[6]Scott also complains that the facts provided by Caddo Parish in its motion for summary judgment "parrot[] the investigative report of Caddo Parish Sheriff"

Regardless of Scott's explanations, questions regarding the veracity of her own statements, or recall of how the events transpired, the fact remains that a predisciplinary conference was held discussing numerous policy violations. Scott has offered no evidence that her superiors did not believe the violations had occurred. In addition, there is no evidence that any other employee of Animal Control who was a supervisor was the subject of a customer complaint regarding the failure to follow up on a rabies incident and failed to properly log narcotics.[7] Thus, Caddo Parish's decision to terminate Scott in light of the facts does not raise an inference of discrimination. Additionally, there is no summary judgment evidence of any racial animus on the part of Caddo Parish or any of its employees or that race played any part in the decision to terminate Scott.

Scott has not provided the court with any evidence that race discrimination was more likely the motivation for Caddo Parish employment decision than the violations of policy. Neither has Scott caused the court to question the decision to terminate an

---

and that this report contains hearsay within hearsay. Id. at 2. Federal Rule of Evidence 803(8) addressing hearsay exceptions regarding public records and reports appears to overcome this assertion.

[7]The evidence before the court could indicate a history of varying responses by Caddo Parish to violations of *other* polices and procedures by *non-supervisory* employees. However, Scott has not convinced the court that such variances would compel a rational fact finder to deem Caddo Parish's proffered reasons for the action contested herein to be pretextual. See St. Mary's Honor Ctr., 509 U.S. at 511, 113 S. Ct. 2742.

employee who is the supervisor of a department for unacceptable policy violations. An employee in a managerial capacity necessarily sets an example for the other employees in her department for what can be considered acceptable and unacceptable behavior.

Scott's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994). Scott has offered no proof that anything other than a perception by management of unsatisfactory job performance motivated her termination. She has brought forth nothing but conclusory allegations to show that her termination was based upon any reason other than the ones articulated by Caddo Parish. Her allegations are clearly insufficient to defeat Caddo Parish's motion for summary judgment. See Bynam v. FMC Corp., 770 F.2d 556, 576 (5th Cir. 1985); Richardson v. Oldham, 12 F.3d 1373, 1378 (5th Cir. 1994) (holding that "[m]ere conclusory allegations are not competent summary judgment evidence . . . ."). Scott has failed to put forth evidence that demonstrates Caddo Parish's reasons were false or were a pretext for discrimination. In order to survive summary judgment, Scott must demonstrate that Caddo Parish acted with discriminatory intent. See Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995). This she has not done. Title VII does not protect an employee against unfair employment decisions. Instead, it protects against employment decisions based

upon discriminatory animus. See Nieto v. L & H Packing Co., 108 F.3d 621, 624 (5th Cir. 1997). Caddo Parish concluded that Scott's conduct was not consistent with its policies. The violations of policy were the source of this employment action, and Scott has provided no evidence that the decision to terminate her was motivated by race or gender. Thus, her claims must be dismissed.

### III. CONCLUSION

Viewing all of the summary judgment evidence in a light most favorable to Scott, the court finds that no reasonable factfinder could infer race or gender discrimination from the evidence set forth in this case. Accordingly, Caddo Parish's motion for summary judgment is **GRANTED**. All of Scott's claims against Caddo Parish are **DISMISSED WITH PREJUDICE.**

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana, this 1st day of July, 2010.

JUDGE TOM STAGG